1   **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                  **FOR THE DISTRICT OF ARIZONA**

8

9   Paul E White, et al.,                    No. CV-16-01185-PHX-JAT

10                Plaintiffs,                 **ORDER**

11  v.

12  Home Depot USA Incorporated,

13                Defendant.

14

15          Pending before the Court is Defendant's Motion for Summary Judgment (Doc.

16  31). The Court now rules on the motion.

17  **I.    BACKGROUND**

18          On May 12, 2017, Defendant filed the pending Motion for Summary Judgment

19  (Doc. 31) and companion Memorandum (Doc. 32). Plaintiffs filed a timely Response on

20  June 12, 2017 (Doc. 34). Defendant then filed a Reply on June 27, 2017 (Doc. 36).[1]

21          Plaintiffs maintain the following four causes of action against Defendant in their

22  First Amended Complaint (Doc. 12): (1) Age Discrimination in Employment Act of 1967

23  _____

24          [1] Defendant also filed a "Response to Plaintiff's Additional Statements of Fact"
    (Doc. 37). At the time of filing, District of Arizona Local Rule Civil 56.1 did not
25  contemplate a reply statement of facts and now expressly forbids such a filing absent
    extraordinary circumstances, which are not present here. *See* LRCiv 56.1(a)-(c); *see also*
26  *GoDaddy.com, LLC v. RPost Commc'ns Ltd.*, No. CV-14-00126-PHX-JAT, 2016 WL
    3068638, at *1 (D. Ariz. June 1, 2016) ("Local Rule 56.1 does not provide for a reply
27  statement of facts or a response to the non-moving party's separate statement of facts").
    The Court reviewed the facts therein and finds that no new, material facts were raised for
28  the first time in Defendant's improper filing. (*See generally* Doc. 37). Although Plaintiffs
    did not move for any formal relief based on this issue (e.g., Plaintiffs did not ask the
    Court to strike it), the Court will disregard the improper filing.

("ADEA") violation; (2) Americans with Disabilities Act ("ADA") violation; (3) Arizona Civil Rights Act ("ACRA") violation; and (4) negligent misrepresentation.[2]

## A. Facts

Plaintiffs brought this action against Plaintiff's former employer, Home Depot ("Defendant"). (Doc. 12 at 1). The following facts are either undisputed or recounted in the light most favorable to the non-moving party.

Plaintiff was employed by Defendant from May 23, 1992 until his termination on February 17, 2014. (Defendant's Statement of Facts ("DSOF"), Doc. 33 ¶ 1; Plaintiffs' Controverting Statements of Fact and Additional Statements of Fact ("PSOF"), Doc. 35 ¶ 1). At the time of his termination, Plaintiff was 54 years old. (PSOF ¶ 47). Prior to his termination, Plaintiff served as the "Packdown" supervisor under assistant managers Christopher Blaskie and Horatio Galaviz, and store manager Scott Steuart. (DSOF ¶ 1; PSOF ¶ 1). Plaintiff's performance review issued on September 10, 2013 rates Plaintiff as a "Top Performer" or "Valued Associate" in all categories. (Doc. 35-1 at 21-23).

Additionally, Plaintiff received two Progressive Discipline Notices ("PDNs") from Defendant in 2013, the year preceding his termination. (DSOF ¶¶ 18-19; PSOF ¶¶ 18-19; *see also* Doc. 33-7; 33-8). Approximately six weeks before his termination, Plaintiff began manipulating inventory records for a disputed purpose. (PSOF ¶¶ 20, 79; DSOF ¶ 20). Defendant deems manipulating company records to be a major violation of Defendant's Integrity/Conflict of Interest policy. (PSOF ¶ 12; DSOF ¶ 12). When Defendant's corporate office became aware of the process by which Plaintiff manipulated records, Defendant instructed Plaintiff to stop and submit a statement regarding his actions. (PSOF ¶¶ 84-88). In early February of 2014, Plaintiff submitted the statement to Galaviz. (*Id*. ¶¶ 84-90).

On February 17, 2014, Steuart and Blaskie informed Plaintiff that Defendant's

---

[2] The first three causes of action are brought exclusively by Plaintiff Paul White ("Plaintiff"); the final negligent misrepresentation claim is brought by both Plaintiff Paul White and his wife, Dianne White, who is also a plaintiff in this action ("Dianne White" is referred to individually by name and collectively with Plaintiff Paul White as "Plaintiffs").

corporate office decided to terminate him and presented Plaintiff with a termination notice. (*Id*. ¶¶ 94-96). According to Plaintiff, when he previously approached Blaskie about the inventory manipulation accusation, Blaskie explained: "Don't worry about it. You've been a long, loyal employee, [you will] probably get a coaching and that will be the end of that." (*Id*. ¶¶ 91-92)). A coaching is the lowest level of employee discipline offered by Defendant. (*Id*. ¶ 93). In the months prior to his termination, Plaintiff asserts that Galaviz made multiple age-related comments to Plaintiff. (*Id*. ¶¶ 49, 55). On one occasion, Plaintiff alleges that he confronted Galaviz about the comments and reported them to another store manager. (*Id*. ¶ 56).

In 1999, Dianne White was diagnosed with Multiple Sclerosis. (*Id*. ¶ 103). Plaintiff and his wife were both covered through Plaintiff's Defendant-provided insurance plan, which was administered by Aetna. (*Id*. ¶ 107; DSOF ¶ 37). In 2012, Dianne White accrued $115,000 worth of claims covered by Defendant; that dollar amount grew to $322,000 in 2013. (PSOF ¶ 114). Following Plaintiff's termination, Plaintiff and Dianne White elected to enroll in health insurance benefits under COBRA. (PSOF ¶¶ 29, 34; DSOF ¶¶ 29, 34). Following Plaintiffs' COBRA election, Dianne White received a notice that reversed Medicare and COBRA (through Aetna) to her primary and secondary coverage, respectively. (PSOF ¶ 120). From this point forward, claims previously submitted by healthcare providers on behalf of Dianne White were rejected, which disrupted Dianne White's treatment schedule and left claims unpaid. (*Id*. ¶¶ 121, 125).

Having set forth the pertinent factual and procedural background, the Court turns to Defendant's Motion for Summary Judgment.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits, or declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id*. 56(c)(1)(A), (B). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of demonstrating to the Court the basis for the motion and the elements of the cause of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id*. at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id*. A material fact is any factual issue that may affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id*. at 247–48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

At the summary judgment stage, the Court's role is to determine whether there is a genuine issue available for trial. There is no issue for trial unless there is sufficient evidence in favor of the non-moving party for a jury to return a verdict for the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 249-50. "If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted." *Id.* (citations omitted).

### A. Admissibility of Evidence at the Summary Judgment Stage

The Ninth Circuit applies a double standard to the admissibility requirement for evidence at the summary judgment stage. *See* 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure § 2738* (3d ed. 1998). With respect to the *non-movant's* evidence offered in opposition to a motion for summary judgment, the Ninth Circuit has stated that the proper inquiry is not the admissibility of the evidence's form, but rather whether the *contents* of the evidence are admissible. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *see also* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); *Celotex Corp.*, 477 U.S. at 324 ("We do not mean that the *nonmoving party* must produce evidence in a form that would be admissible at trial in order to avoid summary judgment." (emphasis added)). With respect to the *movant's* evidence offered in support of a motion for summary judgment, the Ninth Circuit requires that it be admissible both in form and in content. *See Canada v. Blains Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987); *Hamilton v. Keystone Tankship Corp.*, 539 F.2d 684, 686 (9th Cir. 1976).

Accordingly, the Ninth Circuit has held that a non-movant's hearsay evidence may establish a genuine issue of material fact precluding a grant of summary judgment. *See Fraser*, 342 F.3d at 1036-37; *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29 (9th Cir. 2001); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988). Thus, "[m]aterial in a form not admissible in evidence may be used to *avoid*, but not to *obtain* summary judgment, except where an opponent bearing a burden of proof has failed to satisfy it when challenged after completion of relevant discovery." *Tetra Techs., Inc. v. Harter*, 823 F. Supp. 1116, 1120 (S.D.N.Y. 1993) (emphasis in original); *see also Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1121 (E.D. Cal. 2006) ("Because [v]erdicts cannot rest on inadmissible evidence

and a grant of summary judgment is a determination on the merits of the case, it follows that the *moving* party's affidavits must be free from hearsay." (internal quotation marks omitted) (emphasis in original)).

Additionally, unauthenticated documents cannot be considered in granting a motion for summary judgment because authentication is a "condition precedent to admissibility." *Orr v. Bank of Am., NT & SA,* 285 F.3d 764, 773 (9th Cir. 2002); *see also Canada,* 831 F.2d at 925 ("[D]ocuments which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment."). A document authenticated through personal knowledge must be supported with an affidavit "[setting] out facts that would be admissible in evidence" and "show[ing] that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

### 1.    Plaintiffs' Global Evidentiary Objection

Preliminarily, Plaintiffs argue that Defendant's motion must be denied because "Defendant has failed to provide any authenticated evidence to support its Motion." (Doc. 34 at 3). Specifically, Plaintiffs point out that Defendant's motion relies on deposition transcripts attached without a signed court reporter's certificate and business records produced without an affidavit laying the appropriate foundation to authenticate them. (*Id.*). While Plaintiffs are correct that that the Ninth Circuit requires that excerpts of deposition transcript be authenticated for the movant to rely on them at the summary judgment stage, "a court reporter's certification is [not] the only method of authenticating a deposition excerpt." *Renteria v. Oyarzun*, 05-CV-392-BR, 2007 WL 1229418, at *2 (D. Or. Apr. 23, 2007). Under Federal Rule of Evidence 901(b)(4), "the excerpts may also be authenticated by reviewing their contents," and "[a]uthentication is accomplished by evidence sufficient to support a finding that the matter in question is what its proponent claims." *Id*. (quoting Fed. R. Evid. 901(a)).

Here, Defendant did not attach the court reporter's certificates for the depositions of both Plaintiffs and Home Depot store manager Scott Steuart when it filed its motion, but attempts to cure the procedural defect by attaching the applicable certificates to its

Reply (Doc. 36). (*See* Doc. 36-1; 36-2; 36-3). Defendant also provides that "Plaintiffs' counsel was personally in attendance at all of these depositions and is not arguing that there are any inaccuracies in the transcript." (Doc. 36 at 3). "Considering the contents, nature, and appearance of the excerpts, and the fact that [Plaintiffs] do[] not assert they are not authentic, the [C]ourt considers the deposition[s] adequately authenticated for purposes of this summary judgment proceeding." *Glob. Med. Sols., Ltd v. Simon*, No. CV 12-04686 MMM (JCx), 2013 WL 12065418, at *9 (C.D. Cal. Sept. 24, 2013) (citations omitted).

Similarly, Plaintiffs globally object to the business records cited by Defendant in its motion. (*See* Doc. 34 at 3). These objections lack specificity and Plaintiffs do not question the authenticity of any records cited by Defendant. (*Id*.). Further, Plaintiffs rely on several of the same documents in their Response (Doc. 34) that they object to when offered by Defendant. (*Compare* Termination Notice, Doc. 33-2 *with* 35-1 at 13; *compare* July 2013 Coaching, Doc. 33-7 *with* 35-1 at 15-16; *compare* September 2013 Counseling, Doc. 33-8 *with* 35-1 at 18-19; *compare* Cobra Notice, Doc. 33-10 *with* Doc. 35-2 at 25-43; *compare* Aetna Letter, Doc. 33-11 *with* Doc. 35-2 at 45). Nevertheless, Defendant attached a declaration to its Reply (Doc. 36) signed under penalty of perjury by Derek Guidroz, Defendant's District Human Resource Manager, authenticating these business records. (*See* Doc. 36-4). The Court finds that this declaration lays the requisite foundation to authenticate Defendant's business records at the summary judgment stage. Accordingly, Plaintiffs' global evidentiary objection is hereby overruled. The Court will next address Defendant's motion on the merits.

### III.    ADEA CLAIM

In his Complaint, Plaintiff alleges that Defendant discriminated against him because of his age in violation of the ADEA. (Doc. 12 at 7). In its motion for summary judgment, Defendant argues that Plaintiff cannot establish a *prima facie* case of age discrimination and that there is no genuine dispute over the fact that Plaintiff was terminated for legitimate, nondiscriminatory reasons. (Doc. 32 at 3-5).

## A.    Legal Standard

The ADEA makes it "unlawful for an employer ... to discharge any individual [who is at least forty years of age] ... because of such individual's age." 29 U.S.C. §§ 623(a), 631(a). In "disparate treatment" cases such as this, where the plaintiff alleges he was singled out for discrimination, "liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision. That is, the plaintiff's age must have actually played a role in the employer's decision-making process and had a determinative influence on the outcome." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 141 (2000) (internal quotation marks and citations omitted). Under the disparate treatment theory of liability, a plaintiff in an ADEA case can establish age discrimination based on: (1) "circumstantial evidence" of age discrimination or (2) "direct evidence" of age discrimination. *Sheppard v. David Evans & Assocs.*, 694 F.3d 1045, 1049 (9th Cir. 2012) (citing *Diaz v. Eagle Produce Ltd. P'ship,* 521 F.3d 1201, 1207 (9th Cir. 2008); *Enlow v. Salem–Keizer Yellow Cab Co., Inc.,* 389 F.3d 802, 811 (9th Cir. 2004)). In this case, Plaintiff relies on circumstantial, rather than direct evidence. (*See* Doc. 34 at 2, 9).

Courts "evaluate ADEA claims that are based on circumstantial evidence of discrimination by using the three-stage burden-shifting framework laid out in *McDonnell Douglas*." *Diaz,* 521 F.3d at 1207 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under the burden-shifting framework, Plaintiff must first establish a *prima facie* case of discrimination. *Nidds v. Schindler Elevator Corp.,* 113 F.3d 912, 916 (9th Cir. 1997). "Establishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dep't. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254 (1981). If Plaintiff makes a *prima facie* case, the burden shifts to Defendant to articulate a "legitimate, nondiscriminatory reason" for the disparate treatment. *Odima v. Westin Tucson Hotel Co.*, 991 F.2d 595, 599 (9th Cir. 1993) (citing *Burdine,* 450 U.S. at 252-53). If Defendant provides such a reason, Plaintiff then must establish that the reason is a pretext for discrimination. *See id.* Plaintiff does not

have to prove pretext at the summary judgment stage, but does have to introduce evidence sufficient to raise a genuine issue of material fact regarding whether Defendant's articulated reason is pretextual. *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1282 (9th Cir. 2000). Despite the intermediate burden of production shifting, the ultimate burden of proving discrimination remains with Plaintiff at all times. *See id.* at 1281; *Burdine,* 450 U.S. at 253.

### B.    Plaintiff's *Prima Facie* Case

Defendant argues that it is entitled to summary judgment because Plaintiff failed to establish a *prima facie* case of discrimination in violation of the ADEA. (Doc. 32 at 4-5). Plaintiff can establish a *prima facie* case under the ADEA either through direct evidence of discriminatory intent or circumstantially that: "(1) [he] was at least forty years old; (2) [he] was performing [his] job satisfactorily; (3) discharged; and (4) 'either replaced by a substantially younger employee with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination.' " *Dominick v. Wal-Mart Stores, Inc.*, CV 13-8247-PCT-JAT, 2015 WL 1186229, at *4 (D. Ariz. Mar. 16, 2015) (quoting *Sheppard*, 694 F.3d at 1049-50) (alteration in original).

"A formula based on *McDonnell Douglas* must be adapted to the facts of each case." *Douglas v. Anderson,* 656 F.2d 528, 532 (9th Cir. 1981) (citing *Hagans v. Andrus,* 651 F.2d 622, 624–25 (9th Cir. 1981)). In determining whether a plaintiff established a *prima facie* case, "the overriding inquiry is whether the evidence is sufficient to support an inference of discrimination." *Id.* (citing *Burdine,* 450 U.S. at 254). "An inference of discrimination can be established by showing the employer had a continuing need for the employee's skills and services in that their various duties were still being performed . . . or by showing that others not in their protected class were treated more favorably." *Sheppard,* 694 F.3d at 1049-50 (citing *Diaz,* 521 F.3d at 1207).

### 1.    Analysis

Here, the undisputed facts show that Plaintiff was 54 years old when discharged

by Defendant on February 17, 2014, thus establishing the first and third elements of a *prima facie* case under the ADEA. (DSOF ¶ 1; PSOF ¶ 47). The parties do, however, dispute whether Plaintiff establishes the remaining two elements: (2) whether Plaintiff was performing his job satisfactorily; and (4) whether he was replaced by a younger employee or other circumstances give rise to an inference of age discrimination.

### i.     Element (2): Job Performance

Defendant argues that Plaintiff "cannot show that he was satisfactorily performing his job." (Doc. 32 at 4). To support this argument, Defendant contends that Plaintiff admits to committing the major policy violation leading to his termination and that he received two PDNs in 2013 for violations prior to his termination. (*Id.* at 4-5). Conversely, Plaintiff argues that the PDNs were for conduct unrelated to the suggested reason for his termination and Plaintiff's most recent performance review demonstrates that he was performing at or above a satisfactory level. (Doc. 34 at 11). The performance review, dated September 10, 2013, rates Plaintiff as a "Top Performer" or "Valued Associate" in all measured categories. (Doc. 35-1 at 21-23). There are no categories in which the review rated Plaintiff's performance as "Improved Needed." (*Id.*). This review is sufficient to establish, for purposes of considering Defendant's summary judgment motion, that Plaintiff was performing his job satisfactorily. *See Dominick*, 2015 WL 1186229, at *5 (finding that a satisfactory performance review alone provides adequate, *prima facie* evidence of satisfactory performance). Accordingly, Plaintiff has met his initial burden for this element.

### ii.     Element (4): Inference of Age Discrimination

Next, the fourth factor in establishing a *prima facie* case requires Plaintiff to show that Defendant replaced him with a substantially younger employee with equal or inferior qualifications or that he was terminated under circumstances otherwise giving rise to an inference of discrimination. In this case, Plaintiff offers no evidence that he was replaced by a substantially younger employee, but rather argues that the circumstances surrounding his discharge give rise to an inference of age discrimination based on age-

related comments directed towards Plaintiff in the workplace. *See Sheppard,* 694 F.3d at 1049 (citations omitted). The United States Supreme Court has reasoned that even age-based comments made outside of the direct context of a plaintiff's termination may provide *prima facie* evidence of "age-based animus," especially when the speaker has a role in the termination decision. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 133 (2000) (holding that an employee demonstrated evidence of bias based, in part, on the hirer's statements that the plaintiff "was so old [he] must have come over on the Mayflower"). Although "stray[] remarks are insufficient to establish discrimination," the Ninth Circuit has held that "[c]omments suggesting that the employer may have considered impermissible factors are clearly relevant to a disparate treatment claim." *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir. 1990); *see also Normand v. Research Inst. of Am., Inc.*, 927 F.2d 857, 864 (5th Cir. 1991) (Evidence of "age-related statements is probative of [Defendant's] motivation in terminating [Plaintiff]. Furthermore, indirect references to an employee's age, such as those made by [Defendant], can support an inference of age discrimination." (citations omitted)).

Specifically, Plaintiff asks the Court to infer age discrimination based on comments from one of Plaintiff's superiors, assistant manager Horacio Galaviz. Plaintiff asserts that months prior to his termination, Galaviz observed Plaintiff returning an electric shopping cart designed for elderly and disabled individuals, and commented to Plaintiff, "I knew the time would come when you would have to use that." (*See* Doc. 34 at 8 (citing PSOF ¶ 55)). Plaintiff purportedly took exception to the comments and reported the incident to the store manager who took no action because the manager determined that Galaviz was "just kidding." (*See* Doc. 34 at 4, 8 (citing PSOF ¶¶ 55-57)). Galaviz allegedly made additional age-related comments to Plaintiff in the weeks immediately preceding his termination and asked Plaintiff how much longer he planned to remain an employee with Defendant. (*See* Doc. 34 at 4 (citing PSOF ¶ 49)). Although those comments do not have the indicia of age-based animus on their face, the duplicative nature of the comments, passive ratification by Plaintiff's store manager, and fact that

they came from an employee in a position of authority over Plaintiff cumulatively weigh in favor of Plaintiff's argument. *See Tucevich v. State of Nevada*, 172 F.3d 59 (9th Cir. 1999) (finding that two age-related comments by a supervisor amounted to sufficient evidence such that a reasonable factfinder could draw the inference that a defendant-employer possessed an improper age-based motive in employment decisions); *see also Yebra v. Amfit, Inc.*, C14-5233 BHS, 2015 WL 5012598, at *4 (W.D. Wash. Aug. 21, 2015) ("Where the evidence creates reasonable but competing inferences of both discrimination and nondiscrimination, a factual question for the jury exists." (internal quotation marks and citations omitted)). Accordingly, the Court finds that a reasonable jury could conclude that Plaintiff was discharged under circumstances that give rise to an inference of discrimination, and thus Plaintiff established a *prima facie* case under the ADEA.

### C. Defendant's Legitimate, Nondiscriminatory Reason

By making his *prima facie* case, Plaintiff raises a rebuttable presumption that Defendant violated the ADEA. *See Burdine*, 450 U.S. at 254. "Once a *prima facie* case has been made, the burden of production shifts to the defendant, who must offer evidence that the adverse action was taken for other than impermissibly discriminatory reasons." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir.1994) (citing *Burdine*, 450 U.S. at 254). In other words, Defendant must "offer a legitimate, nondiscriminatory reason for [Plaintiff's] termination." *Id.* at 892.

Defendant explains that Plaintiff was terminated because he adjusted Defendant's inventory records in a manner that intentionally circumvented Defendant's manager approval requirements. (*See* Doc. 32 at 5-6). According to Defendant's Integrity/Conflict of Interest policy, "[f]alsifying, altering, destroying or misusing a Company document or a document relied upon by [Defendant]" constitutes a major policy violation, which warrants termination. (*See id.* at 6 (citing PSOF ¶ 12)). While Plaintiff asserts that he had a legitimate purpose for manipulating inventory records, he nonetheless admits to engaging in the practice. (*Compare* PSOF ¶ 20 *with* DSOF ¶ 20). "Several courts have

recognized that violation of company policies is a legitimate, nondiscriminatory reason for terminating an employee." *Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1170 (C.D. Cal. 2013) (collecting cases); *see also Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011) (finding that the defendant "articulated a legitimate, nondiscriminatory reason for [the plaintiff's] termination by pointing to her multiple violations of company policy"); *Mitchell v. Donahoe*, CV 11-02244-PHX-JAT, 2013 WL 4478892, at *9 (D. Ariz. Aug. 21, 2013) (holding that a plaintiff's violations of Postal Service policy constituted a legitimate, nondiscriminatory reason for the plaintiff's termination). Accordingly, the Court finds that Defendant satisfied its burden by offering a legitimate, nondiscriminatory reason for Plaintiff's termination.

### D. Plaintiff's Evidence of Pretext

Because Defendant has met its burden of providing a legitimate, nondiscriminatory reason for terminating Plaintiff, "the presumption [of unlawful discrimination] created by the *prima facie* case[ ] disappears." *Dominick*, 2015 WL 1186229, at *6 (quoting *Wallis*, 26 F.3d at 892) (alteration in original). "This is true even though there has been no assessment of the credibility of [Defendant] at this stage." *Wallis*, 26 F.3d at 892 (citing *Burdine*, 450 U.S. at 254). The burden now shifts back to Plaintiff to introduce evidence sufficient to raise a genuine issue of material fact regarding whether Defendant's articulated reason was pretextual. *See Coleman*, 232 F.3d at 1282.

#### 1. Legal Standard

In response, Plaintiff must produce "very little" direct or "specific" and "substantial" indirect evidence showing that Defendant's proffered reason for the dismissal is not credible. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220-21 (9th Cir. 1998). "In other words, the plaintiff 'must tender a genuine issue of material fact as to pretext in order to avoid summary judgment.' " *Wallis*, 26 F.3d at 892 (quoting *Id.*)). Plaintiff can meet this burden by showing that Defendant's "proffered reason was not the true reason for the employment decision . . . [Plaintiff] may succeed in this either directly

by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256 (citation omitted). Notably, the Ninth Circuit "require[s] very little evidence to survive summary judgment in a discrimination case, because the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by the factfinder, upon a full record." *Lam v. Univ. of Haw.*, 40 F.3d 1551, 1564 (9th Cir. 1994) (internal quotation marks and citation omitted).

### 2. Analysis

Here, Plaintiff argues that Defendant's reason for terminating him is pretextual because his actions underlying the policy violation were in furtherance of his employment objectives and he already established *prima facie* evidence of the inference of age discrimination. (*See* Doc. 34 at 8-9); *see also supra* Part III(B)(1)(ii). Specifically, Plaintiff contends that his primary responsibility as the Packdown department supervisor was to ensure that items were "always in stock" on the shelves in Defendant's store. (Doc. 34 at 5). To accomplish this objective, Plaintiff had to update computer inventory totals when inventory ran low in order for items to be reordered and remain in stock. (*See id*.). While Plaintiff provides that "he had the authority to make inventory adjustments up to a $500.00 total daily limit," he was required to submit adjustments over the limit through Defendant's computer system, which required manager approval to take effect. (PSOF ¶ 69). Plaintiff ran afoul with Defendant's policy by incrementally adjusting inventory totals over the course of multiple days to stay under his daily limit—thus creating an intermediately "inaccurate product count for [Defendant's] inventory records"—instead of submitting the adjustments and awaiting manager approval. (Doc. 32 at 6; *see also* Doc. 34 at 6).

Plaintiff maintains that his actions were in accordance with his specific employment objectives regarding Defendant's "always in stock" priority, so termination for those actions is a mere pretext for age discrimination. (Doc. 34 at 9). Upon being

made aware of Plaintiff's process, a member of Defendant's corporate office instructed Plaintiff to stop and submit a statement regarding his actions. (*Id*. at 4). As requested, Plaintiff submitted a statement to Galaviz, the assistant manager who previously made age-related comments to Plaintiff. (*Id*.). When Plaintiff asked his direct manager, Chris Blaskie, what the ramifications for his actions might be, the manager allegedly explained: "Don't worry about it. You've been a long, loyal employee, [you will] probably get a coaching and that will be the end of that." (*Id*. (citing PSOF ¶¶ 91-92)). A coaching is the lowest level of employee discipline offered by Defendant. (PSOF ¶ 93). Shortly thereafter, however, Plaintiff was informed by Blaskie and his store manager that Defendant's corporate office decided to terminate Plaintiff for his inventory management actions. (Doc. 34 at 4 (citing PSOF ¶¶ 94-96)).

Defendant argues that "[Plaintiff] fails to present any indirect evidence that [Defendant's] reason for termination is inconsistent or not believable." (Doc. 32 at 7). While Defendant is correct that Plaintiff's "own belief that his actions were justified does not create a triable issue of pretext," Plaintiff does supply more evidence than simply a supposedly benevolent motive behind his policy violation to call his termination into question. *See Austin v. Horizon Human Services Inc.*, CV-12-02233-PHX-FJM, 2014 WL 1053620, at *4 (D. Ariz. Mar. 19, 2014). Specifically, there is a disputed issue of fact as to the role that Galaviz may have played in Plaintiff's termination after Galaviz made multiple age-related comments to Plaintiff giving rise to the possible inference of age-based discrimination. *See supra* Part III(B)(1)(ii); (PSOF ¶ 28; *see also Poland v. Chertoff*, 494 F.3d 1174, 1182 (9th Cir. 2007) ("bias is imputed to the employer if the plaintiff can prove that the allegedly independent adverse employment decision was not actually independent because the biased [manager] influenced or was involved in the decision or decisionmaking process"); *Galdamez v. Potter*, 415 F.3d 1015, 1026 (9th Cir. 2005) ("Title VII may still be violated where the ultimate decision-maker, lacking individual discriminatory intent, takes an adverse employment action in reliance on factors affected by another decision-maker's discriminatory animus"). Additionally,

Plaintiff's contention that his manager viewed Plaintiff's actions as an offense warranting only minimal discipline also supports Plaintiff's argument of pretext. Accordingly, the Court finds that Plaintiff met his burden of introducing sufficient evidence at the summary judgment stage to raise a genuine issue of material fact as to whether Defendant's articulated reason for his termination was pretextual. Defendant's motion for summary judgment is hereby denied as to Plaintiff's ADEA claim.

## IV. ACRA CLAIM

The Arizona Supreme Court has explained that the ACRA is "modeled after and generally identical to the federal statute in the area[.]" *Higdon v. Evergreen Int'l Airlines, Inc.*, 673 P.2d 907, 910 n.3 (Ariz. 1983). The Arizona Supreme Court further provides that "federal case law on Title VII is persuasive authority for reviewing ACRA claims." *Knowles v. U.S. Foodservice, Inc.*, CV-08-01283-PHX-ROS, 2010 WL 3614653, at *3 (D. Ariz. Sept. 10, 2010) (citing *Id.*). As such, "[a]ge discrimination claims under the ACRA are analyzed under the same *McDonnell Douglas* framework as age discrimination claims under the ADEA." *See id.* (citing *Love v. Phelps Dodge Bagdad, Inc.*, 2005 WL 2416363, *7 (D. Ariz. 2005)). Here, Defendant analyzed both the ADEA and ACRA claims together. (Doc. 32 at 3-8). Accordingly, the Court adopts its above reasoning and Defendant's motion for summary judgment on Plaintiff's ACRA claim is denied for the same reasons as to the ADEA claim. *See supra* Part III.

## V. ADA CLAIM

Next, Plaintiff maintains a claim under the ADA for "association discrimination." (Doc. 12 at 7-8). Plaintiff contends that Defendant discriminated against him because of his association with his wife who has a disabling condition. (*See id.*). Defendant again argues that Plaintiff cannot establish a *prima facie* case of association discrimination and that there is no genuine dispute over the fact that Plaintiff was terminated for legitimate, nondiscriminatory reasons. (Doc. 32 at 8-10).

### A. Legal Standard

The ADA prohibits employers from "excluding or otherwise denying equal jobs or

benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). Title VII governs the analytical framework of the ADA. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 (2003); *Budnick v. Town of Carefree*, 518 F.3d 1109, 1113-14 (9th Cir. 2008).

> [I]n order to establish a *prima facie* claim of association discrimination under the ADA, [a] plaintiff must show: (1) he was qualified to perform the job; (2) his employer knew he had a relative or associate with a disability; (3) he was subjected to an adverse employment action; and (4) there is a causal connection between the adverse employment action and the employee's association with a disabled person.

*Austin*, 2014 WL 1053620, at *2 (collecting cases).

Once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action. *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004). The burden then shifts back to the plaintiff to "demonstrate a triable issue of fact as to whether such reasons are pretextual." *Id*. Plaintiff must offer specific and substantial evidence of pretext in order to survive summary judgment. *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1170 (9th Cir. 2007). "[C]ourts only require that an employer honestly believed its reason for its actions, even if its reason is foolish, or trivial[.]" *Westendorf v. W. Coast Contractors of Nevada, Inc.*, 712 F.3d 417, 425 (9th Cir. 2013) (internal quotation marks and citation omitted).

**B.    Analysis**

Here, the undisputed fact that Plaintiff was terminated establishes the third element of an adverse employment action. (DSOF ¶ 1; PSOF ¶ 47). Additionally, Plaintiff's recent, positive performance review provides *prima facie* evidence that Plaintiff was qualified to perform his job, which Defendant does not dispute. (*See* Doc. 35-1 at 21-23). The parties do, however, dispute whether Plaintiff establishes the remaining two elements: (2) whether Defendant knew that Plaintiff had a relative with a disability; and (4) whether there is a causal connection between the adverse employment

action and Plaintiff's association with a disabled person.

### 1. Element (2): Knowledge of Disability

While it is undisputed that Dianne White had a qualifying disability—Multiple Sclerosis—at the time of Plaintiff's termination, Defendant argues that Plaintiff "cannot prove that his employer knew he had a relative with a disability." (Doc. 32 at 10; *see also* DSOF ¶ 3; PSOF ¶ 3). To support this argument, Defendant contends that its store manager never met Dianne White and no other member of Defendant's organization knew of her disability, so Defendant's decision to terminate Plaintiff could not have been based on an unknown fact. (Doc. 32 at 9-10). Conversely, Plaintiff argues that "he communicated frequently with his managers that he worked [for Defendant] for the insurance" benefits. (Doc. 34 at 11 (citing PSOF ¶ 51)); *see also Universal Pictures Co. v. Harold Lloyd Corp.*, 162 F.2d 354, 378 (9th Cir. 1947) ("A corporation is chargeable with knowledge and notice of such matters becoming known to its agents and employees within the course and scope of their agency and employment"). Plaintiff further provides that Defendant's insurance plan is a "self-funded plan," so Defendant incurred the costs associated with $115,000 in claims for Dianne White in 2012, and over $322,000 in claims for her in 2013. (Doc. 34 at 4, 11 (citing PSOF ¶ 114)). While Plaintiff does not produce any affirmative evidence that Defendant was aware of his wife's disability, the contention is based on an arguably reasonable inference. However, even if Plaintiff creates a genuine dispute of fact as to the knowledge element, Plaintiff's *prima facie* case fails on the remaining, disputed element.

### 2. Element (4): Causal Connection

Next, Defendant argues that Plaintiff cannot show a causal connection between his wife's disability and the decision to terminate his employment. (Doc. 32 at 10). Plaintiff alternatively argues that "[i]t is no great stretch to ask this Court for the factual inference that someone in [Defendant's organization] could see that Paul White was a high cost employee because of his wife's disability and fired him for it." (Doc. 34 at 11). While Plaintiff speculates that Defendant terminated him in order to minimize the financial

burden on its health insurance program, he offers no specific evidence to support the claim. *See Austin*, 2014 WL 1053620, at *3 (holding that a plaintiff's associational discrimination claim could not survive summary judgment when he did not produce evidence beyond a defendant's motive "to minimize the financial burden on its health insurance program" when the plaintiff was terminated shortly after his son incurred significant medical bills covered by the defendant-company's medical insurance).

In opposition, Defendant provides that Plaintiff's health benefits were managed by Aetna, an unrelated and financially disinterested third-party. (*See* Doc. 32 at 10). Plaintiff can provide no reasonable assertion that the health benefits manager had any interaction or shared any information with those involved in Defendant's decision to terminate Plaintiff. (*See* Doc. 36 at 8). Defendant also contends that Plaintiff Dianne White was covered under Plaintiff's health benefit plan for 10 years prior to his termination and was living with Multiple Sclerosis for the entire period. (Doc. 32 at 10). Further, "no specific medical issue or medical disclosure [] arose prior to the termination." (*Id.*). While Plaintiff provides that coverage costs increased on a year-to-year basis, he offers no evidence that anything drastically changed in regard to his wife's health status or coverage costs leading up to Plaintiff's termination. (*See* Doc. 35 at 53). Plaintiff's argument asks the Court to "stretch" to stack inference upon inference with regard to the element of causal connection, but "Plaintiff cannot establish a *prima facie* case of discrimination based on speculation." *Austin*, 2014 WL 1053620, at *3. Accordingly, the Court finds that Plaintiff fails to establish a *prima facie* claim of association discrimination. In so finding, the Court need not examine the remaining components of the burden-shifting framework as to this claim. Defendant's motion for summary judgment is hereby granted as to Plaintiff's claim of association discrimination under the ADA.

## VI. NEGLIGENT MISREPRESENTATION

Finally, both Plaintiffs maintain a claim for negligent misrepresentation. (Doc. 12 at 9). Plaintiffs contend that Defendant represented to them that Plaintiffs' insurance

coverage would be "identical" and continue "as is" if Plaintiffs elected COBRA following Plaintiff's termination. (Doc. 34 at 12). Plaintiffs did in fact elect COBRA, but maintain that their coverage subsequently changed. (*Id*.). In its motion for summary judgment, Defendant argues that "Plaintiffs' negligent misrepresentation claim fails because [Plaintiffs] cannot show that Defendant provided false information." (Doc. 32 at 12).

## A. Legal Standard

Arizona recognizes the tort of negligent misrepresentation as defined in the Second Restatement of Torts. *St. Joseph's Hosp. v. Reserve Life Ins.*, 742 P.2d 808, 813 (1987). The Restatement provides, in pertinent part:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1) (Am. Law. Inst. 1977).

Accordingly, to establish a claim for negligent misrepresentation, Plaintiffs must show:

> (1) [Defendant] supplied false information to [Plaintiffs] (2) in a transaction in which it had a pecuniary interest, (3) [Defendant] intended that the information would guide [them] in a business transaction, (4) [Defendant] failed to exercise reasonable care or competence in obtaining or communicating the information, (5) [Plaintiffs] relied on the information, (6) [Plaintiffs'] reliance was justifiable, and (7) [Plaintiffs] suffered pecuniary loss as a result.

*Lorona v. Arizona Summit Law Sch., LLC*, 188 F. Supp. 3d 927, 934 (D. Ariz. 2016) (internal quotation marks omitted) (citing Restatement (Second) of Torts § 552); *accord* Revised Arizona Jury Instructions (Civil), Commercial Torts Instruction 23 (6th ed. 2017). Notably, "[n]egligent misrepresentation is 'narrow in scope' because it is premised on the reasonable expectations of a foreseeable user of information supplied in connection with commercial transactions." *Id.* (citing *St. Joseph's Hosp.*, 742 P.2d at

1    813-14).

2    **B.    Analysis**

3        Here, Plaintiffs provide that they "expected" a continuation of the same coverage

4    they received during Plaintiff's employment with Defendant, but fail to offer proof that

5    Defendant supplied false information in relation to a transaction. (*See* Doc. 34 at 12

6    (citing PSOF ¶ 116)). In his deposition, Plaintiff answered that he did not have any

7    conversations with anyone about continuation of benefits following termination. (*See*

8    Doc. 33-1 at 13-14 ("No . . . my wife takes care of all of the insurance)). Similarly,

9    Dianne White also answered in her deposition that she did not have any conversations

10   with anyone she knew to work for Defendant about how claims would be handled with

11   COBRA (*See* Doc. 33-2 at 11). Rather, Plaintiffs base their expectation on their

12   interpretation of Defendant's 2011 Benefits Summary packet and Cobra Enrollment

13   Notice received after electing COBRA (Doc. 35-2 at 15, 25) ("The continued coverage

14   under the Medical, Vision and Dental Plans . . . will be identical to those offered to

15   similarly situated active associates, as required under COBRA").

16       Defendant argues that neither of these documents constitutes a representation

17   made to Plaintiffs in relation to their decision to elect COBRA. (Doc. 32 at 12). "[A]bsent

18   any affirmative misrepresentations by" Defendant, "an action for negligent

19   misrepresentation will not lie[.]" *Frazier v. Sw. Sav. & Loan Ass'n*, 653 P.2d 362, 367

20   (Ariz. Ct. App. 1982). Rather, Plaintiffs acknowledge that their assumptions were based

21   strictly on their own interpretation of a benefits document issued years before Plaintiff's

22   termination and the Cobra Enrollment Notice received after Plaintiffs' decision was

23   already effective. (Doc. 34 at 13); *see also Banks v. Union Labor Life Ins. Co. (ULLICO)*,

24   221 F.3d 1347 (9th Cir. 2000) (holding that a plaintiff's assumptions "are not equivalent

25   to justifiable reliance on falsehoods"). Accordingly, the Court finds that Defendant made

26   no false representations related to Plaintiffs' decision to elect COBRA and is, therefore,

27   entitled to summary judgment on Plaintiffs' negligent representation claim.[3]

28   _____

             [3]  The Court notes that Defendant also argues that Plaintiffs' negligent

                                        - 21 -

## VII. CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 31) is **GRANTED** in part and **DENIED** in part. Summary Judgment is granted to Defendant on Plaintiff's claim of association discrimination under the ADA and Plaintiffs' negligent misrepresentation claim, but denied as to both remaining age-based claims under the ADEA and ACRA. The Clerk of the Court shall not enter judgment at this time.

Dated this 5th day of February, 2018.

James A. Teilborg
Senior United States District Judge

---

misrepresentation claim is preempted by ERISA. (*See* Doc. 32 at 11; Doc. 36 at 9). Conversely, Plaintiffs argue that ERISA does not preempt negligent misrepresentation claims. (*See* Doc. 34 at 12). The Court, however, need not reach that issue because, in granting summary judgment to Defendant on this claim, the issue of ERISA preemption is moot. The Court also has not considered Plaintiffs' alternative argument that, if preemption applies, this claim could be brought under ERISA.